<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DENISE URBAN,<br><br>    Plaintiff,<br> v.<br><br>BAYER CORPORATION<br>PHARMACEUTICAL DIVISION.<br><br>    Defendant. | Civil Action No. 05-1305 (KSH)<br><br><u>**OPINION**</u> |

**KATHARINE S. HAYDEN, U.S.D.J.**

  This lawsuit, filed *pro se* by Denise Urban ("Urban"), charges employment discrimination on the part of her former employer, Bayer Corporation ("Bayer"). Urban worked at Bayer from October 2, 2000 to March 7, 2003 as a pharmaceutical sales representative ("PSR"). Before the Court is Bayer's motion for summary judgment arguing on procedural grounds that this lawsuit must be dismissed because Urban failed to file a charge with the EEOC within the 300-day time limit set forth in 42 U.S.C. § 2000e-5(e)(1). Bayer also contends on substantive grounds that Urban has failed to produce sufficient evidence to support her claim of unlawful sex discrimination. For the reasons that follow, the motion for summary judgment is **granted**.

## **I.  BACKGROUND AND PROCEDURAL HISTORY**

The following factual background is established by the record, consisting of the pleadings, plaintiff's deposition, the defendant's certification with attached exhibits, the defendant's requests for admissions, the defendant's statements of material facts submitted pursuant L. Civ. R. 56.1, and the final pretrial order.  The record also contains two memoranda that Urban sent to the human resources department and legal department at Bayer on January 27, 2003 and February 6, 2003.[1]  (Attachments to Urban's Letter in Opposition to Motion for Summary Judgment; Bayer's Exhibits J and K to Osora Declaration.)  Urban relies on these memoranda to describe her claim of discrimination.  (See, e.g., Urban's Letter in Opposition to Motion for Summary Judgment.)

As a PSR, Urban was responsible for selling and marketing prescription medicine – specifically two prescription drugs, Cipro® and Avelox® –  to physicians in northern New Jersey.  (Id. at ¶ 2; Urban's Pretrial Statement 2.)  Her job responsibilities also included various administrative duties and regular sales calls to physicians.  (Urban's Pretrial Statement 2.)

Urban interviewed for her position with David Cousins ("Cousins") and Bruce Woodhall, and she was hired in September of 2000.  (Id. at 1.)  Initially, Cousins was her division sales manager and Joe Schlitz ("Schlitz") was her regional sales manager.  (Bayer's Statement of Material Facts ¶ 3.)  She reported directly to Cousins until December of 2002 when he was replaced by John Daly ("Daly").  (Id. at ¶ 6.)

---

[1] The Court will refer to these memoranda as Urban's January 27, 2003 Memorandum and Urban's February 6, 2003 Memorandum respectively.

2

On July 3, 2002, Urban was placed on a Work Plan for Success ("Work Plan") (Id. at 2), that detailed a number of areas where she needed improvement – (1) administrative skills, (2) territory management, and (3) sales attainment. (Id. at ¶ 8.) The Work Plan also informed Urban that "failure to consistently meet the requirements . . . may result in the escalation of a 'Work for Improvement Plan' or further disciplinary action up to and including termination of your employment." (Ex. A. to Osora Decl.) She was given 90 days to meet the requirements of the Work Plan. (Id.)

After the 90 days expired, Cousins placed Urban on a 60 day Final Work Improvement Plan ("Final Plan") on October 29, 2002. (Bayer's Statement of Material Facts ¶ 11.) This Plan listed administrative skills and territory management as the areas for improvement because Urban had sufficiently improved sales attainment. Once again she was informed that failure to meet the plan's requirements could lead to further disciplinary actions, including dismissal. (Id. at ¶ 12.) Upon the completion of the initial 60 day period, the Final Plan was extended for another 30 days, until January 29, 2003. (Id. at ¶ 14.)

Daly replaced Cousins as Division Sales Manager in January 2003. (Urban's Pretrial Statement 2), and he monitored Urban's compliance with the Final Plan for the remainder of her tenure with Bayer. (Bayer's Statement of Material Facts ¶15.) When the extended period of the Final Plan expired, Daly prepared a report on Urban's performance that indicated she had not sufficiently demonstrated improvement in the specified areas. (Id. at 13; Urban Deposition 186, Ex. H to Osora Decl.) Subsequently, Urban's employment with Bayer was terminated.

After her termination Urban filed a charge with the Equal Employment Opportunity Commission ("EEOC"). (Bayer's Statement of Material Facts ¶ 24.) Thereafter, she filed the

3

current action, *pro se*, on March 4, 2005.

**II. STANDARD OF REVIEW**

Summary judgment is appropriate when the moving party shows that "there is no genuine issue as to any material fact." Fed R. Civ. P. 56 (c). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the moving party is the defendant, the initial burden is on the movant to demonstrate that the plaintiff has failed to establish one of the essential elements of her case. Celotex Corp. v. Catrett, 477 U.S. 317, 323-324 (1986). The non-moving party may not rely on the pleadings to resist the motion for summary judgment. "A plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each and every essential element of his case." Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995)(citing Celotex v. Catrett, 477 U.S. 317, 322 (1986)).

While the Court is cognizant that litigants appearing *pro se* are given "greater leeway where they have not followed the technical rules of pleading and procedure," Tabron v. Grace, 6 F.3d 147, 153 (3d Cir. 1993), the record in this case reveals that Urban regularly did not comply with Bayer's discovery requests and various orders issued by the Magistrate Judge. Urban failed to produce documents pursuant to Rule 26 (Document # 9) and to file responses to Bayer's requests for admissions. (Bayer's Motion for Summary Judgment 8 n.4.) She failed to file a written narrative statement by the deadline ordered by Magistrate Judge Shwartz. (Document

#27.) She also failed to comply with Magistrate Judge Shwartz's order to produce certain documents. (Document #27.) Urban also filed her opposition to Bayer's Motion for Summary Judgment late. (Document # 23, 25.)

Such deficiencies in Urban's compliance with her responsibilities as a litigant cannot be explained by ignorance of "technical rules of pleading or procedure." Indeed, Magistrate Judge Shwartz's orders reflect enlargements of time and give notice of consequences. An Order dated April 18, 2006 (Document #27) enlarged the time for Urban to file her narrative statement of the facts and clearly explained the consequences of her failure to do so. There are consequences to Urban's deficiencies in this motion as well. In analyzing the record for purposes of deciding the motion, the Court is constrained to deem matters in Bayer's requests for admissions to be admitted,[2] and the Court will not rely upon the document which Urban discusses in her opposition to this motion, but failed to produce during discovery.[3]

**III. DISCUSSION**

      A. Timeliness of the Plaintiff's Charge

---

[2] Under Rule 36 if the party does not respond to a request for an admission within 30 days the matter is deemed admitted. Fed. R. Civ. P. 36(a). In addition, "[i]t is well established that admissions under Rule 36 are conclusive and sufficient to support summary judgment." DirecTV, Inc. v. Gallagher, 2005 U.S. Dist. LEXIS 9898 (D.N.J. 2005)(citations omitted).

[3] In her letter in opposition to this motion Urban refers to a "document that David Cousins handed out at the December 2002 meeting." She claims that this letter "demonstrated my administrative and territory skills were equal or better then some others in the division." (Urban's Letter in Opposition to Motion for Summary Judgment.) This document was not produced by Urban during discovery.

Bayer argues that summary judgment should be granted in its favor because Urban failed to file a charge of discrimination ("charge") with the EEOC in a timely manner. Under 42 U.S.C. § 2000e-5(e)(1), a charge must be filed within 300 days of the alleged unlawful employment practice. The individual must then serve notice upon the person against whom the charge is made within 10 days. Id. If a charge is not filed within 300 days of the alleged unlawful employment practice the claim is time barred. AMTRAK v. Morgan, 536 U.S. 101, 109 (2002).

The time period for filing a charge begins to run when alleged unlawful employment practice occurs. The Supreme Court has held that "an adverse employment action occurs, and the statute of limitations therefore begins to run, at the time the employee receives notice of that action and termination is a delayed but inevitable result." Watson v. Eastman Kodak Co., 235 F.3d 851, 852-853 (3d Cir. 2000)(citing Delaware State College v. Ricks, 449 U.S. 250, 261-262 (1980)).

The unlawful employment practice that Urban has alleged is termination on the basis of her sex. Urban's cause of action accrued on the date she received notice of her termination. Urban stated in her EEOC charge that she was informed of her termination on March 3, 2003.[4] (Bayer's Ex. A to Requests for Admission; Bayer's Requests for Admission 5.) Urban filed her charge on February 12, 2004. (Urban Dep. 233; Bayer's Ex. A to Requests for Admission; Bayer's Requests for Admission 1, 2.) Urban filed her charge 346 days after her cause of action accrued. Therefore, her claim was not filed in a timely manner under Section 2000e-5(e)(1).

---

[4] Bayer claims that Urban was notified of her termination on February 21, 2003. (Bayer's Motion in for Summary Judgment 12 n.7.) Bayer argues, however, that even if Urban was notified on March 3, 2003 as she claims her charge would still be untimely.

The filing of a timely charge with the EEOC is not a jurisdictional requirement, but akin to a statute of limitations. Robinson v. Dalton, 107 F.3d 1018, 1021 (3d Cir. 1997). As a result, it is subject to equitable doctrines such as tolling. Zipes v. Trans World Airlines, Inc. 455 U.S. 385, 393 (1982). If applicable, the doctrine of equitable tolling could stop the 300-day time requirement for filing a charge from running. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994). The Third Circuit has identified three principal but non-exclusive situations where equitable tolling is appropriate: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." Id.

None of these circumstances is present in this case. Urban stated in her deposition testimony that no one at Bayer caused any delay in filing her charge of discrimination. (Urban Dep. 237, Bayer's Requests for Admission No. 7.) Urban has not argued and nor is there any indication in the record that she was prevented from asserting her rights. Urban admitted that she never filed any other charges of discrimination against Bayer other than the charge she filed with the EEOC on February 12, 2004. (Urban Dep. 236, Bayer's Requests for Admission No. 3, 4.) So she did not timely assert her rights mistakenly in the wrong forum.

Urban filed her charge with the EEOC in an untimely manner and equitable tolling does not apply. The conclusion must be that her claim is time barred under 42 U.S.C. § 2000e-5(e)(1). This finding that Urban failed to file her charge in a timely manner is sufficient to award summary judgment for Bayer. See AMTRAK v. Morgan, 536 U.S. 101, 109-110 (2002)

B.  Title VII Claim

Albeit the procedural ruling above is sufficient for dismissal, the Court will address Bayer's substantive challenge to Urban's claims.  Under Title VII, it is an unlawful employment practice to discharge an employee on the basis of race, color, religion, sex or national origin.  42 U.S.C. § 2000e-2(a)(1).  Urban argues that Bayer terminated her employment on the basis of her sex.  Specifically, she claims that her former manager Cousins sought to terminate her after he discovered she was a single mother.  (Urban's January 27, 2003 Memorandum.)  She claims Cousins mentioned her status as a single mother to her on seven occasions and twice mentioned that she was single mother to other managers.  (Id.)  Urban also claims that Cousins gave another Bayer employee "a difficult time because she was a single mother."  (Id.)  Urban has stated that Allen Blackwood, a fellow employee, told her that Cousins said that he would rather have men working for him.  (Urban's February 6, 2003 Memorandum.)  Urban also claims that Cousins also made comments that demonstrate his animus towards her.  (Id.)  According to her Cousins told her that someday she would get married.  She states that she overheard him say to a male employee,  ". . .and that is why we have wives," in a derogatory manner.  (Id.)  Based on this conduct, Urban claims her termination was the result of unlawful sex discrimination.

It is Bayer's position that Urban was terminated because she failed to meet the requirements of the Final Plan  (Bayer's Statement of Material Facts 4), and that the decision to terminate her was made collectively by the Human Resources Department, the Division Sales Manager (Daly), and the Regional Manager (Schlitz).  (Bayer's Statement of Material Facts ¶ 13.)  Under Title VII, the ultimate burden of persuasion remains at all times with the plaintiff, who must persuade the trier of fact that the defendant intentionally discriminated against her.

Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000).  There are two ways that a plaintiff can prove an unlawful employment practice under Title VII: mixed-motive cases and pretext cases.  Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089,1095-96 n.4 (3d Cir. 1995)(explaining the difference between the two types of cases).[5]

### 1. Mixed-Motive Analysis

Mixed-motive cases are those in which the employment decision is based on legitimate reasons and an illegitimate reason.  The mixed-motive analysis was first recognized by the Supreme Court in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), and has been codified as 42 U.S.C. § 2000e(2)(m).  To succeed the plaintiff must "present sufficient evidence for a reasonable jury to conclude, by a preponderance of evidence, that the discriminatory reason was a motivating factor in the employment decision."  Desert Palace v. Costa, 539 U.S. 101 (2003).

Urban relies upon two forms of evidence to show that discrimination was a motivating factor in the decision to fire her.  First, she relies on comments by Cousins that she believes demonstrate his discriminatory animus.  Second, she relies upon her own allegations of discrimination.

Urban claims that Cousins made several statements that display discriminatory animus. (Urban's February 6, 2003 Memorandum.)  Urban claims she overhead Cousins say, ". . . and that is why we have wives" a derogatory manner.  (Id.)  She also claims that Cousins often mentioned the fact that she was a single mother and once told her that she would get married

---

[5] The Third Circuit has explained that although the labels "mixed-motive" and "pretext" are misleading the court will continue to use those terms because they are familiar and the introduction of new terms may lead to more confusion.  Watson v. SEPTA, 207 F.3d 207, 215 (3d Cir. 2000).

someday. (Id.) In response, Bayer asserts that Cousins was not involved in the employment decision and that his alleged statements were not made in the context of the employment decision (Bayer's Brief in Support of Motion for Summary Judgment 16), and Urban does not contest these points.

To support a mixed motive claim the plaintiff must produce either direct evidence of discrimination or circumstantial evidence that directly reflects upon the alleged unlawful basis for the employment decision. Walden v. Georgia-Pacific Corp. 126 F.3d 506, 513 (3d Cir. 1997). Justice O'Connor stated in her concurrence in Price Waterhouse,:

> Stray remarks in the workplace, while perhaps probative of sexual harassment, cannot justify requiring the employer to prove that its employment decisions were based on legitimate criteria. Nor can statements by nondecisionmakers or statements by decisionmakers unrelated to the decisional process itself, suffice to satisfy the plaintiff's burden in this regard.

Price Waterhouse, 490 U.S. at 277 (O'Connor J., concurring)(internal citations omitted).[6] Rather the plaintiff must show that "the decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision." Id.

Cousins's statements are not probative on the issue of whether discrimination was a motivating factor in the employment decision. Urban claims that Cousins mentioned Urban's status as a single mother on several occasions, but she fails to give context. Urban also states that Cousins told her that she would get married someday, but she does not explain how discussing her marital status demonstrates a discriminatory animus against women. His other statement, ". . . and that is why we have wives," may be insensitive, but Urban does not allege Cousins was making the remark in reference to her, nor does the remark necessarily show

---

[6]Urban does not allege sexual harassment in her complaint.

discriminatory animus against women.

Even more significant than the lack of context and focus is the undisputed fact that Cousins was not involved in the employment decision to fire Urban, and his alleged statements were not shown to have been made in the context of the employment decision. The record reflects that these statements were made by a non-decisionmaker outside of the decisional process, and Urban fails to establish that the decisionmakers "placed substantial negative reliance on an illegitimate criterion in reaching their decision." See Price Waterhouse, 490 U.S. at 277. For this reason, Cousins's statements are insufficient evidence to support Urban's mixed-motive claim.

The second form of evidence that Urban relies upon are her own unsupported allegations of discrimination that are set forth in the memoranda that she wrote in 2003. For example, in one of the memoranda Urban stated: "When Mr. Cousins hired me he was not aware of the fact that I was a single mother. When he learned of this his attitude changed completely. He then started to build a case to get make [sic] me look bad and get rid of me." (Urban's January 27, 2003 Memorandum.) Urban does not support this allegation with details about how Cousins "built a case" to get rid of her; rather her claim is summary and bereft of incidents, dates, facts. Urban also claims that two other women at Bayer were discriminated against by Cousins. "The court will be convinced that I have evidence to support my claim when the 2 other women with the same experience testify . . ."[7] (Urban's Letter in Opposition to Motion for Summary Judgment.) However, Urban failed to provide statements from these women. Urban mentions a few other

---

[7] The two other women Urban claims had the same experience with Cousins are Kelly Julian and "Sergio." (See Urban's February 6, 2003 Memorandum.)

people who could potentially corroborate her allegations but failed to produce statements from these potential witnesses as well.

Allegations of discrimination alone are insufficient to oppose a motion for summary judgment. The Third Circuit has recognized that "a party resisting a [summary judgment] motion cannot expect to rely merely upon bare assertions, allegations or suspicions." Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981). Instead, the non-moving party "must point to concrete evidence in the record that supports each and every essential element of his case." Orsatti, 71 F.3d at 484. Bayer has properly supported its motion for summary judgment in this case with affidavits and exhibits. (Bayer's Brief in Support of Motion for Summary Judgment.) Federal Rule of Civil Procedure 56 (e) explains what type of evidence the non-moving party must use to respond to a properly supported motion for summary judgment. There must be affidavits - based on an affiant's personal knowledge - that set forth facts that would be admissible in evidence. The affidavits may be supplemented with depositions, answers to interrogatories, and other affidavits.

Urban has produced none of this. Her bare assertions about what other people would say are insufficient to oppose a properly supported motion for summary judgment. Ness, 660 F.2d at 519. The evidence Urban has adduced does not show that there is a genuine issue that Bayer placed substantial negative reliance on an illegitimate criterion in reaching its decision. See Price Waterhouse, 490 U.S. at 277.

**2. Pretext Analysis**

A pretext claim is analyzed under the three-step of burden shifting framework identified in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). First, the plaintiff bears the initial

burden of showing a prima facie case of discrimination.  Second, if the plaintiff makes a prima facie case of discrimination then the burden shifts to the defendant "to articulate a legitimate nondiscriminatory reason for the employee's [termination]."  Id. at 802.  Third, if the defendant articulates a legitimate reason then the burden shifts back to the plaintiff to prove by a preponderance of evidence that the employer's proffered reasons are merely a pretext for discrimination.  Jones v. School Dist. of Philadelphia, 198 F.3d 403, 410 (3d Cir.1999)(citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981)).

To make a prima facie case of discrimination, plaintiff must prove the existence of four factors:  (1) that she was a member of a protected class under Title VII; (2) that she was qualified for the position; 3) that she was terminated;  4) under circumstances that give rise to an inference of discrimination.  Jones, 198 F.3d at 410.  Bayer does not contest that Urban can make out a prima facie case of discrimination.  (Bayer's Brief in Support of Motion for Summary Judgment 19), and so Bayer must articulate a legitimate non-discriminatory reason for firing her.

Bayer has presented a non-discriminatory reason for Urban's termination, specifically "her failure to show sufficient improvement in the areas identified in her Final Plan."  (Bayer's Brief in Support of Motion for Summary Judgment 19.)  The Third Circuit has stated that the defendant's burden of producing a legitimate non-discriminatory reason for the unfavorable employment decisions is a "relatively light burden."  Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).  This Court finds that Bayer has met its burden of articulating a legitimate non-discriminatory reason for Urban's discharge, and so the burden shifts back to Urban to prove that the reason offered by Bayer was merely a pretext for discrimination.

A plaintiff can show that the defendant's proffered reason was pretext by submitting

13

evidence which "1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action."[8] Fuentes, 32 F.3d at 762.  The plaintiff must do more than show that the defendant's proffered reason was wrong or mistaken.  Rather, "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Id. at 765 (internal citations omitted).

In her opposition to this motion, Urban argues that Bayer's proffered reason for her discharge was pretextual because she was an effective salesperson.  (Urban's Letter in Opposition to Motion for Summary Judgment.)  She claims that there are doctors who will attest to her "professionalism and ability to communicate product information." (Id.)  She also points to "sales data that demonstrates [her] success." (Attachment to Urban's Letter in Opposition to Motion for Summary Judgment.)  Urban also contends that her case would be supported by evidence that is outside of the record, including potential testimony of witnesses, and documents that were not produced.  (Urban's Letter in Opposition to Motion for Summary Judgment.)

Bayer counters that Urban's lack of improvement on her final plan was the sole reason for her termination.  (Bayer's Statement of Material Facts ¶ 18.)  Bayer states that Cousins, the person that she claims discriminated against her, did not even participate in the decision to

---

[8] The second prong of the Fuentes test is almost identical to the standard for a mixed motive claim. Since the Court has already analyzed Urban's claim under the mixed motive standard, there is no need further to address the second prong of the Fuentes test.

terminate her employment, which was made by collectively by her new manager, John Daly, the regional manager, Joe Schlitz, and Bayer's Human Resources Department. (Id.) Plaintiff has not produced evidence to dispute this. Bayer also argues that contrary to Urban's assertions, her managers did not believe that she improved in the areas identified by her Final Plan – territory management and administrative skills. (Bayer's Brief in Support of Motion for Summary Judgment 20-21.) Although sales attainment was listed as one of the categories in her Work Plan it was not an area that was listed on the Final Plan, and so improvement in the area of sales attainment is not relevant to the issue of pretext because it was not considered in the adverse decision. (Bayer's Brief in Support of Motion for Summary Judgment 20-21.)

This Court finds that Urban has not adduced sufficient evidence to create a genuine issue of material fact concerning whether Bayer's proffered reason for her termination was pretextual. Urban has essentially relied on the allegations in her pleadings to support her claim of pretext instead of adducing evidence. Significantly and as earlier indicated, evidence that is outside the record cannot be considered on this motion, such as the potential testimony of witnesses and documents not in the record. (See supra pp. 11-12 and n.3.) Urban does point to her sales figures and a list of clients who would attest to her abilities as pretext evidence. (Attachments to Urban's Letter Brief in Opposition to Motion for Summary Judgment.) This documentation might show that she was an effective salesperson, but it is not probative on the issue of pretext because Urban does not relate it to the specified areas for improvement – administrative skills and territory management. As such, sales figures and evidence of satisfied customers do not reveal "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally

15

find them unworthy of credence." Fuentes, 32 F.3d at 764.

As to the Title VII claims, therefore, the Court concludes that Urban has not produced sufficient evidence that shows that sex was a motivating factor in the employment decision or that Bayer's proffered reason for her termination was pretextual. This finding is sufficient to award summary judgment for Bayer.

**IV.  CONCLUSION**

In its motion for summary judgment, Bayer has demonstrated a procedural bar to Urban's lawsuit, and Urban has not "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56 (e). Urban filed her EEOC charge more than 300 days after the alleged unlawful employment practice so her claim is time barred. Urban failed to demonstrate a genuine issue of material fact warranting a trial on her Title VII claim. Therefore, Bayer is entitled to summary judgment on both procedural and substantive grounds. Its motion is **granted** and an appropriate order will be entered

Dated: November 13, 2006                                s/   Katharine S. Hayden
                                                        **Katharine S.  Hayden, U.S.D.J.**